**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ACQUISITION & RESEARCH LLC,**

        **Plaintiff,**

                                      **Civil Action 2:22-cv-2333**

      **v.**                             **Magistrate Judge Elizabeth P. Deavers**

**ROGER G. FILION,** *et al.***,**

        **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court on the parties' letter briefs regarding two emails[1] Plaintiff has withheld from production on the basis of attorney-client privilege.  (Docs. 38–41).  For the following reasons, the Court finds that attorney-client privilege protects the subject emails from disclosure, and Defendants' request to compel production is **DENIED**.

**I.**

In this breach of contract action, Plaintiff Acquisition & Research LLC ("A&R") alleges that it is entitled to 10% of the proceeds from the sale of Defendant R. Filing Manufacturing ("RFM").  Prior to the sale, Defendant RFM and its owner and president, Defendant Roger G. Filion, entered into an agreement (the "Consulting Agreement") with A&R.  Under the terms of the Consulting Agreement, A&R agreed to "assist [Defendants] in the process of finding, identifying, contacting and advising [Defendants] of potential qualified buyers for [Defendants' business] on behalf of [Defendants]."  (Doc. 1-1 at ¶ 1).  In return, Defendants would pay A&R a

---

[1] As reflected in Plaintiff's privilege log, Doc. 39-5, the emails at issue are a September 27, 2021 email from C. Max Meyer to Thomas Pampush, and a September 28, 2021 email from Thomas Pampush to C. Max Meyer.  The Court will collectively refer to these emails as the "subject emails."

"Consulting Fee" equal to 10% of the total transaction value so long as Defendants' company was sold within twelve months of October 5, 2021. (*Id. at* ¶ 5). A&R says that despite the completed sale within the required time frame, Defendants have not paid the 10% Consulting Fee. (Doc. 1 at 2). In response—and relevant here—Defendants have filed Counterclaims for reformation and/or rescission of the Consulting Agreement, generally alleging mutual and/or unilateral mistake insofar as the Consulting Agreement did not accurately reflect the terms of the parties' agreement. (Doc. 12). In other words, Defendants challenge whether the parties actually agreed to a 10% Consulting Fee.

Given the factual dispute, discovery has centered on the parties' understanding and consummation of the agreement. During his deposition, C. Max Meyer, President of A&R, testified that the Consulting Agreement was prepared by an attorney named Thomas Pampush. (Doc. 39-2). Mr. Meyer further testified that while A&R did not have an engagement letter with Mr. Pampush and did not pay Mr. Pampush for his services, Mr. Pampush acted as A&R's attorney "for the purpose of [the Consulting Agreement]." (*Id.*). To this end, Mr. Meyer testified that he contacted Mr. Pampush by email to convey at least some of the terms of the Consulting Agreement, and that they later met to discuss the Consulting Agreement. (*Id.*).

Following Mr. Meyer's deposition, Defendants contacted the Court to discuss the production of the subject emails, which Plaintiff has withheld as protected under the attorney-client privilege. Defendants advised the Court that they believe the subject emails may support their theory of mistake which underlies their Counterclaims, and that they dispute Plaintiff's assertion of attorney-client privilege. The Court held a telephonic discovery conference, directed Plaintiff to submit the subject emails for *in camera* review, and ordered letter briefing. Plaintiff provided the emails for *in camera* review, and the parties timely filed separate letter briefs. (Docs.

2

38, 39).   Defendants filed a supplemental letter brief "in light of highly relevant documents produced by [A&R] after the parties filed their [initial] briefs with the Court."  (Doc. 40).  At the Court's direction, Plaintiff then timely filed a supplemental letter brief.  (Doc. 41).  The issue is now fully briefed and is ripe for judicial review.

## II.

Ohio law governs Plaintiff's claim of attorney-client privilege.  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1500899, at *3 (S.D. Ohio May 18, 2007) (citing *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006)).   Under the privilege, confidential attorney-client legal communications are permanently protected from disclosure unless the protection is waived.  *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 2012) (citation omitted).  The privilege provides:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 995 (Ohio 2005) (quoting *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998)).  That said, "[n]either the attorney-client privilege nor the work product doctrine applies to prevent the disclosure of underlying facts, regardless of who obtained those facts."  *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981)). Finally, "[t]he burden of establishing the existence of the privilege rests with the person asserting it," and "[s]imply asserting that information is privileged is insufficient to meet the burden."  *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. CV 2:16-CV-557, 2019 WL 1499164, at *3 (S.D. Ohio Apr. 5, 2019) (citations omitted).

### III.

Against that background, the Court appreciates Defendants' concern about the subject emails, but can confirm from *in camera* inspection that the subject emails warrant protection under the attorney-client privilege.  As a threshold matter, Mr. Meyer's deposition testimony that Mr. Pampush acted as A&R's attorney "for the purpose of [the Consulting Agreement]," (Doc. 39-2), even in the absence of an engagement letter or any payment, is sufficient to establish the attorney-client relationship.  *Storage Cap Mgmt. LP v. Robarco, Inc.*, No. 2:19-CV-4328, 2020 WL 1163820, at *4 (S.D. Ohio Mar. 11, 2020) ("In determining the existence of an attorney-client relationship, the test is essentially whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client.  Neither a formal contract nor the payment of a retainer is necessary to trigger the creation of the attorney-client relationship.") (internal quotation marks and citations omitted).  Further, this testimony is consistent with the substance of the subject emails, in which Mr. Meyer sought Mr. Pampush's legal advice outside of the presence of any third parties.  To this end, the subject emails do not merely disclose the underlying facts of the parties' negotiations—rather, Mr. Meyer sought specific legal counsel and direction for the agreement.  In response, Mr. Pampush provided not only a draft agreement, but also detailed legal advice.  While the Court recognizes that Mr. Meyer's testimony may not have been clear on this point, the emails speak for themselves and warrant protection.

Separately, the Court is not moved by Defendants' arguments that Plaintiff waived protection of the subject emails by consulting with a third party, Kevin Kroos; or that the subject emails were not intended to stay confidential.  (*See* Doc. 40).  Again, the Court understands Defendants' uncertainty about the nature of the relationship between Mr. Meyer, Mr. Pampush,

and Mr. Kroos—especially given Plaintiff's recent production of various emails between the three individuals—but the subject emails are only between Mr. Meyer and Mr. Pampush, and there is no evidence that Plaintiff waived protection of the subject emails by disclosing them to Mr. Kroos. (*See* Doc. 41 ("It is clear the [subject emails] were never shared with Mr. Kroos, as he was not copied on them and did not produce them under subpoena as he did the August emails referenced in Defendants' supplementary letter.")). To the extent the emails between the three men in early August 2021 are relevant to the subject inquiry, it is only to establish the context in which Mr. Meyer later sought Mr. Pampush's legal advice in late September 2021. Defendants' concern about these emails is therefore unwarranted.

Accordingly, Defendants' request for the subject emails is **DENIED**, as the Court finds that attorney-client privilege protects the subject emails, and Plaintiff has not waived the privilege.

**IT IS SO ORDERED.**


Date: March 17, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE