IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ACQUISITION & RESEARCH LLC,

      Plaintiff,

                                                  Civil Action 2:22-cv-2333
    v.                                    Magistrate Judge Elizabeth P. Deavers

ROGER G. FILION, *et al.*,

      Defendants.

**OPINION AND ORDER**

With the consent of the parties and by Order of Reference (ECF No. 15), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of Plaintiff Acquisition & Research LLC's Motion for Partial Summary Judgment. (ECF No. 44.) On May 15, 2023, Defendants Roger G. Filion, Jr. and R. Filion Manufacturing Inc. dba Kasi Infrared ("RFM") filed Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 47.) On November 17, 2022, Plaintiff Acquisition & Research LLC ("A&R") filed Plaintiff Acquisition & Research LLC's Reply in Support of Motion for Partial Summary Judgment. (ECF No. 50.) For the reasons discussed herein, Plaintiff Acquisition & Research LLC's Motion for Partial Summary Judgment (ECF No. 44) is **DENIED**.

**I.**

In this breach of contract action, A&R alleges that it is entitled to 10% of the proceeds from the sale of RFM's infrared asphalt repair business (the "Business"), pursuant to an agreement (the "Consulting Agreement") between A&R, on one side, and RFM and Defendant Roger G. Filion, the owner of RFM, on the other. (*See generally* ECF No. 1.) Under the terms of the Consulting Agreement, which A&R President C. Max Meyer signed on A&R's behalf,

A&R agreed to "assist [RFM] in the process of finding, identifying, contacting and advising [RFM] of potential qualified buyers for the Business on behalf of [RFM]." (ECF No. 1-1 at PAGEID # 5, ¶ 1). Additionally, the Consulting Agreement states that Defendants agreed to pay A&R a fee equal to 10% of the total transaction value (the "Consulting Fee") so long as the Business was sold within twelve months. (*Id.* at PAGEID # 6, ¶ 5). A&R alleges that despite selling the Business within the required time frame, Defendants have not paid A&R the 10% Consulting Fee. (ECF No. 1 at PAGEID # 2).

In response, Defendants have filed Counterclaims for reformation and/or rescission of the Consulting Agreement, generally alleging mutual and/or unilateral mistake insofar as the Consulting Agreement did not accurately reflect the terms of the parties' agreement. (ECF No. 12.) Specifically, Defendants allege that they only agreed to pay A&R the Consulting Fee "*if and only if* [A&R] "procured the buyer," and that they never believed that A&R would be entitled to the Consulting Fee regardless of its role in the sale of Defendants' company. (*See id.* (emphasis in original).) Defendants also allege that A&R repudiated the Consulting Agreement before Defendants found a buyer for the company. (*Id.*)

On March 29, 2023, the Court denied Plaintiff's Motion for Judgment on the Pleadings, generally concluding that "a set of facts exists under which Defendants could prevail against A&R's breach of contract claim." (*See* ECF No. 43.) Accordingly, on April 17, 2023, A&R filed the subject Motion, generally arguing that "the signed Consulting Agreement accurately reflects the entire agreement between the parties, and this Court should enforce the agreement as a matter of law." (ECF No. 44.)[1] A&R argues that "undisputed facts" not only establish

---

[1] A&R moves for partial summary judgment, seeking only judgment with respect to liability on its breach of contract claim. (*Id.* at PAGEID # 236.) Defendants, on the other hand, merely

2

Plaintiff's breach of contract claim, but also "demonstrate that the Consulting Agreement was not terminated and/or the [Consulting Fee] survived termination of the [Consulting Agreement]." (*Id.* at PAGEID ## 241-246.)  A&R also argues that "[t]here could be no mutual mistake" because "Defendants can point to no fact from which there is a plausible inference that Plaintiff could be said to have known Defendants were mistaken," and that Defendants' own negligence precludes their Counterclaims under both of Defendants' theories of mistake. (*Id.* at PAGEID ## 246-249.)

In response, Defendants stand by their theories of mistake, arguing that "[b]oth parties testified that the Consulting Agreement contains a number of terms to which they never agreed" and that "[t]here is evidence that Mr. Meyer knew of the mistake . . . because he commissioned the written agreement and relayed the terms of the oral agreement . . . to be memorialized." (ECF No. 47 at PAGEID ## 366-367.)  Defendants also generally argue that "there are material questions of fact with regard to [Defendants'] affirmative defenses . . . including . . . for mistake, prior material breach, revocation, repudiation, oral modification, and accord and satisfaction." (*Id.* at PAGEID # 367.)

In reply, A&R argues that Defendants' mutual mistake arguments do not pass muster, because Defendants' evidence omits critical context and Defendants improperly rely on irrelevant third-party testimony.  (ECF No. 50 at PAGEID ## 627-630.)  Additionally, A&R argues that "Defendants' own negligence has not been rebutted clearly and convincingly," specifically because "Mr. Filion's failure to read the terms of the Consulting Agreement . . . is the exact type of negligence found not to be a defense for enforcement of a contract." (*Id.* at

---

argue that Plaintiff is not entitled to summary judgment, as they did not move for summary judgment on either Plaintiff's Complaint or their Counterclaims.

3

PAGEID ## 630-631.) As for Defendants' unilateral mistake arguments, A&R submits that "there is nothing in the record that supports a claim that [A&R] knew or should have known of that mistake for the same reason" that Defendants' mutual mistake defense should fail. (*Id.* at PAGEID ## 631-633.) In sum, A&R insists that "Defendants have no competent evidence to defeat the breach of contract claim" and that "Defendants have not provided evidence of their other affirmative defenses." (*Id.* at PAGEID ## 633-638.)

## II.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to

4

create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

On March 29, 2023, the Court denied A&R's motion for judgment on the pleadings because it found that "a set of facts exists under which Defendants could prevail against A&R's breach of contract claim." (ECF No. 43 at PAGEID # 233.) Now, upon the conclusion of discovery, the Court's position has not changed. Because genuine disputes as to material facts remain, they must be resolved by a jury – not by the Court at the summary judgment stage.

As a preliminary matter, the parties appear to agree that A&R has established a *prima facie* case of breach of contract. In order to do so, Plaintiff must show (1) that a contract existed; (2) that Plaintiff performed; (3) that Defendant breached; and (4) that Plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) ("To establish a breach of contract, a plaintiff must show that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages.") (citation omitted). Defendants do not contend that Plaintiff has failed to establish any of these elements, and instead argue that "[their]

5

affirmative defenses preclude summary judgment on A&R's breach of contract claim." (ECF No. 47 at PAGEID # 385.) In making this argument, Defendants implicitly concede that Plaintiff has a breach of contract claim, while contending that Plaintiff simply cannot have any recovery on that claim. *See Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 775 (S.D. Ohio 2021), *reconsideration denied*, No. 1:17-CV-406, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021) ("[A]n affirmative defense is a "perhaps, but" defense, which allows a party to argue that it is not liable even if the plaintiff has proved a prima facie case.") (citations omitted). Accordingly, the issue before the Court is whether any genuine disputes exist as to the material facts underlying Defendants' various affirmative defenses, which are: unilateral mistake, mutual mistake, prior material breach, revocation and/or repudiation, oral modification, and accord and satisfaction. (*See* ECF No. 47 at PAGEID ## 384-385.)

Notwithstanding Defendants' other affirmative defenses, the critical dispute in this action is Defendants' theory of mistake, either unilateral or mutual, which stems from Defendant's belief that "when Mr. Meyer asked his [lawyer]² to draft a written agreement, he circulated an agreement which was inconsistent with the parties' prior oral agreement," but that the parties (or at least Defendants) did not appreciate this mistake until long after signing the Consulting

---

² Defendants reference the fact that Mr. Meyer sought (and received) legal counsel, including but not limited to the drafting of the subject Consulting Agreement, from a third party who was Mr. Meyer's "former lacrosse coach and family friend (who happens to be an attorney)." (*See* ECF No. 47 at PAGEID # 366.) On March 17, 2023, the Court held that it "understands Defendants' uncertainty about the nature of the relationship" between Mr. Meyer and the third party, but confirmed after *in camera* inspection that Mr. Meyer's email communications with the third party were protected by attorney-client privilege. (ECF No. 42.) Despite this ruling, which clearly established the third party as Mr. Meyer's attorney for purposes of the subject Consulting Agreement, Defendants exclusively refer to the third party as Mr. Meyer's "former lacrosse coach" throughout the subject briefing. (*See generally* ECF No. 47.) At trial, Defendants would be well served to rethink this transparent attempt to delegitimize Mr. Meyer's attorney-client relationship given the Court's clear guidance on this issue.

Agreement. (ECF No. 47 at PAGEID # 366.) Most significantly, Defendants point to Section 5 of the Consulting Agreement, which established the payment of a Consulting Fee as follows:

> **If a sale** (in whole or in part or whether as an asset or equity transfer or a merger or other consolidation or otherwise) of the Business **occurs** while this Agreement is in effect or during the twelve (12) month period thereafter, then Company and Owner shall pay to Consultant a consulting fee (the "Consulting Fee") of ten percent (10%) of the total transaction value.

(ECF No. 1-1 at PAGEID # 6 (emphasis added).) Defendants maintain that contrary to this language, the parties had agreed "that A&R would receive 10% *only if* [Mr. Meyer] procured the buyer for [RFM]," and Defendants argue that certain other provisions of the Consulting Agreement also are "entirely contradicted by Meyer's contemporaneous communications with the Filions in early October 2021, the terms of the parties' previously consummated oral agreement . . . and Meyer's own deposition testimony." (ECF No. 47 at PAGEID ## 376-377 (emphasis in original).) Accordingly, Defendants alternatively argue that either: (i) Mr. Meyer, acting on A&R's behalf, not only knew about the inconsistencies but also took advantage of them (i.e., unilateral mistake); or (ii) "neither of [the parties] appreciated those inconsistencies when they signed the document" (i.e., mutual mistake). (*Id.* at PAGEID ## 375-381.)

Not surprisingly, the elements of these defenses are similar. First, in order to prevail on their theory of unilateral mistake, Defendants must establish that "one party recognize[d] the true effect of an agreement while the other [did] not." *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 750 F. Supp. 2d 839, 848 (N.D. Ohio 2010) (internal citation omitted). Specifically, this means that Defendants "must show by clear and convincing evidence: (1) that [they] made a mistake at the time the contract was entered into; (2) that the mistake had a material effect on the agreed exchange of performances that was adverse to [them]; and (3) that [A&R] or should have known of that mistake." *Id.* (citing *Aviation Sales, Inc. v. Select Mobile Homes,* 48 Ohio App.3d 90, 548 N.E.2d 307, 310 (1988) (applying Restatement (Second) of Contracts § 153); *Gartrell v.*

*Gartrell,* 2009-Ohio-1042 (Ohio Ct. App.)). Alternatively, to prevail on their theory of mutual mistake, Defendants must show that there was "a mistake made by both parties regarding the same fact." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 772 (6th Cir. 2008) (citing *Reilley v. Richards*, 69 Ohio St.3d 352, 632 N.E.2d 507, 509 (1994)). For purposes of these defenses, a "mistake" is defined as "[a]n erroneous belief as to the contents or effect of a writing that expresses [an] agreement." *ArcelorMittal Cleveland Inc.*, 750 F. Supp. 2d. at 846 (citing Restatement (Second) of Contract § 151, cmt. a). "It is a mistake where the parties to a contract reach an agreement, but then fail to correctly reduce that agreement to writing." *Id.* (citing Restatement (Second) of Contract § 155, cmt. a).

Against this background, summary judgment is inappropriate, as genuine issues of material fact abound regarding Defendants' alternative theories of mistake. Specifically, as a threshold matter it remains impossible to determine as a matter of law whether the Consulting Agreement contains a mistake at all, let alone whether Defendants made a mistake on their own or whether both parties made a mistake. On this issue, the parties present multiple contradictory pieces of evidence:

- Mr. Filion testified that he did not "word for word, read the agreement" (*see* ECF No. 44-2 at PAGEID # 278), before also testifying that he "review[ed] [the Consulting Agreement]," that he "read through the [Consulting Agreement]," that he "reviewed [the Consulting Fee provision] prior to signing the [Consulting Agreement]," and that he specifically "review[ed] Section 9[3] prior to signing the [Consulting Agreement]" (*see* ECF No. 47-1 at PAGEID ## 404-405, 408-409, 412);

---

[3] Section 9 of the Consulting Agreement states in relevant part that the Consulting Agreement "represents the entire agreement between the parties." (ECF No. 1-1 at PAGEID ## 6-7.)

8

- Mr. Meyer testified that he read and understood the Consulting Agreement prior to signing it (*see* ECF No. 44-1 at PAGEID # 262), but he wrote an email to Mr. Filion on October 5, 2021 (the date he signed the Consulting Agreement, and when he asked Mr. Filion to sign the Consulting Agreement) to confirm that "[t]his document says I am acting as your advisor in order to help sell your company and will take a piece of the proceeds ***if I do get someone*** to purchase the company" (*see* ECF No. 47-9 at PAGEID # 520 (emphasis added));

- Mr. Filion testified that Mr. Meyer would have been entitled to compensation ***if Mr. Filion had provided Mr. Meyer with a lead that resulted in a sale*** (ECF No. 47-1 at PAGEID # 403, lines 13-17 (emphasis added)), but also testified that Mr. Meyer would only be entitled to compensation "***[i]f [Mr. Meyer] found the sale***" (*id.* at lines 21-23 (emphasis added)); and

- Despite signing the Consulting Agreement on October 5, 2021, Mr. Meyer testified that he could not remember discussing whether he would be entitled to the Consulting Fee "regardless of whether [he] identified or procured the ultimate buyer" until ***after*** the ultimate buyer initiated discussions with RFM, without A&R's involvement, on December 2, 2021 (ECF No. 47-5 at PAGEID # 474).

Given these contradictory pieces of evidence, any of three outcomes remain possible: (1) the Consulting Agreement did not contain a mistake; (2) Defendants made a mistake by erroneously believing that the Consulting Agreement required A&R to procure the ultimate buyer to trigger payment of the Consulting Fee; or (3) A&R and Defendants failed to correctly reduce their agreement (including that the Consulting Fee would be due only if A&R procured the ultimate buyer) to writing.

Needless to say, the Court is not in a position to resolve this dispute, as it is a jury's duty

9

to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter in such instances. *Kay v. Am. Nat'l Red Cross*, No. 2:09-CV-351, 2011 WL 13302690, at *2 (S.D. Ohio Mar. 14, 2011) ("The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003)). Instead, for purposes of the subject Motion, all the Court can determine is that A&R has not met its burden of establishing that there is no genuine dispute as to any material fact. Accordingly, summary judgment is inappropriate.

### IV.

For these reasons, Plaintiff Acquisition & Research LLC's Motion for Partial Summary Judgment (ECF No. 44) is **DENIED**.

**IT IS SO ORDERED.**

DATED: October 19, 2023

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**